

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*

*One Saint Andrew's Plaza*
*New York, New York 10007*

August 1, 2008

**BY HAND DELIVERY AND ECF**

Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

**Re: United States v. Parvinder Dosanjh**
**08 Cr. 211 (AKH)**

Dear Judge Hellerstein:

The Government respectfully submits this letter-brief in opposition to the pretrial discovery motion of Parvinder Dosanhj. Specifically, the defendant moves the Court (i) to direct the Government to disclose all Rule 16 material well in advance of trial; (ii) to direct the Government to disclose all exculpatory and impeachment evidence reasonably in advance of trial; (iii) to direct the Government to respond to the defendant's request for any "other crimes" evidence that the Government will introduce at trial; (iv) to direct the Government to provide the defense, reasonably in advance of trial, with the identity of any expert witnesses and any and all information, studies and reports upon which any expert witness will base his/her testimony opinions; (v) to direct the Government to provide the defense with a "limited" bill of particulars; (vi) to direct the Government to provide the defense with a witness list; and (vii) to permit the defendant to file additional motions, including motions *in limine*, if necessitated by the disclosure of additional facts in the future. For the reasons to follow, all of defendant Dosanhj's motions are either unfounded, moot, premature, or not required by any statute or the Federal Rules of Criminal Procedure, and should be denied.

**Defendant's Discovery Requests**

The defendant makes a number of discovery requests ranging from Rule 16 evidence and exculpatory and impeachment materials to a specified bill of particulars and

witness lists.[1] For the reasons set forth below, the defendant's discovery requests should be denied.

**I. Defendant's request for Rule 16 material should be denied.**

On June 9, 2008, the defendant formally requested disclosure of Rule 16 materials, as well as other "pretrial materials," including reports of investigation, search, seizure and related materials, and wiretapping, eavesdropping, consensual recordings, and related materials." (Def. Mot. at 5). The defendant's instant motion reiterates the requirements of Rule 16 discovery and itemizes a number of requests including wiretap evidence and foreign evidence obtained by the United States Government via MLAT.

The Government understands and embraces its Rule 16 obligations, and has complied with them — and more. The Government made its preliminary Rule 16 disclosure on May 13, 2008, and therein agreed that it would continue to make supplemental Rule 16 disclosures as it became aware of discoverable material's existence, consistent with its continuing discovery obligations. See Rule 16(c), Fed. R. Crim. P.[2] Included with the Government's discovery letter were copies of the indictment, arrest warrant, and criminal history, photos of various cash and marijuana seizures, and a redacted report containing the defendant's post-arrest statements.[3] Subsequently, the Government provided supplemental Rule 16

---

[1] The Government received the defendant's June 9, 2008 "boilerplate" discovery letter (of which the Court was copied) in which the defendant made many of the same requests she now makes to the Court. The Court should be aware that, in addition to its two discovery productions thus far, the undersigned responded orally to the defendant's June 9 letter, and advised defense counsel, who does not regularly practice in this District, that such a letter was unnecessary here, as the Government was well aware of all its discovery obligations.

[2] Of course, the Government recognizes that its obligation to provide discovery is of a continuing nature, and the Government will, if it obtains additional evidence, supplement its production of material required by Rule 16(a)(1)(A) and any other provision of Rule 16, for that matter.

[3] A copy of the redacted DEA-6 report which was produced to the defense on May 13, 2008, is enclosed for the Court's review. While the defendant characterizes it as "heavily redacted," Your Honor can see that it clearly described the lengthy and detailed post-arrest statement made by the defendant to the agents after she was advised of her *Miranda* rights, and voluntarily waived them. In her motion, the defendant notes that the report was "authored by an unknown agent," but this is irrelevant information in the context of Rule 16. Also, the Court can also glean from the defendant's post-arrest confession precisely the criminal conduct at issue in this case. The Government respectfully suggests that the defendant's need for discovery above-and-beyond that required under Rule 16, and certainly a bill of particulars, is wholly obviated by

discovery including a pen register and cellphone records. As described below, while these productions included all the Rule 16 discovery of which the Government was aware, because there is not voluminous Rule 16 discovery in this case, the Government has made a detailed proffer to defense counsel and a second to the defendant herself about the facts of this prosecution.

Accordingly, the defendant's motion should be denied. Further, the Government understands that Rule 16 imposes a continuing obligation on the Government, with which the Government has and will continue to comply. If the Government learns of additional Rule 16 evidence in its possession or additional Rule 16 evidence comes into its possession, it will make such materials available to the defense forthwith.

## II. Defendant's request for disclosure of all "exculpatory and impeachment evidence reasonably in advance of trial should be denied.

Though the defendant acknowledges the cases interpreting *Brady* v. *Maryland*, 373 U.S. 83 (1963) with regard to the scope and timing of the Government's obligation to disclose impeachment materials, she still requests that such material be produced "sufficiently in advance of trial." As the Government explicitly informed the defendants in its May 13, 2008 discovery letter, the Government recognizes its obligations under *Brady*, and its progeny and is aware of its continuing duty of disclosure. The Government is required to produce evidence favorable to the accused where such evidence is "material" either to guilt or to punishment. *See United States* v. *Coppa*, 267 F.3d 132, 139 (2d Cir. 2001). Such evidence is only considered "material" to guilt, thus triggering the Government's disclosure obligations, if, without disclosure of the information, a "reasonable probability will exist that the outcome of a trial in which the evidence had been disclosed would have been different." *Id.* at 142. The Government is required to disclose such "material" information "in time for its effective use at trial." *Id.*

However, the Second Circuit also held in *Coppa* that a district court may not order disclosure far in advance of trial. *Id.* As a general matter, a defendant has no constitutional right to receive *Brady* material prior to trial. *United States* v. *Frank*, 11 F. Supp. 2d 322, 324 (S.D.N.Y. 1998). *See Weatherford*, 429 U.S. at 559; *United States ex rel Lucas* v. *Regan*, 503 F.2d 1, 3 n.1 (2d Cir. 1974) ("Neither *Brady* nor any other case . . . requires that disclosure under *Brady* must be made before trial."), *cert. denied*, 420 U.S. 939 (1975). Due process requires only that a defendant receive such information before it is too late for him to make beneficial use of it at trial. *United States* v. *Olson*, 697 F.2d 273, 275 (8th Cir. 1983); *United States* v. *Frank*, 11 F. Supp. 2d at 324.

---

a close study of the defendant's post-arrest statement. The defendant admitted to the criminal conduct charged in this case and, at trial, the Government would offer her post-arrest statement, as well as witness testimony and corroborative evidence which relates to the specific drug transactions referenced by the defendant in her confession.

Courts in this Circuit have repeatedly denied requests for discovery orders pursuant to *Brady* where, as here, the Government has made a good-faith representation to the Court and defense counsel that it recognizes and has complied with its disclosure obligations under *Brady*. *See, e.g., United States* v. *Gallo*, 98 Cr. 338 (JGK), 1999 WL 9848, at *7 (S.D.N.Y. Jan. 6, 1999) (denying defendant's motion to compel production of *Brady* material based on Government's representations that "it is aware of its obligations under *Brady* . . . and will produce any *Brady* material to the defense well before trial"); *United States* v. *Yu*, 1998 WL 57079, at *4-*5 (E.D.N.Y. Feb. 5, 1998) (denying defense request that Government provide early disclosure of *Brady* material because Government acknowledged its continuing obligation to provide exculpatory material upon its discovery and assured that it would comply with that obligation); *United States* v. *Perez*, 940 F. Supp. 540, 543 (S.D.N.Y. 1996) ("Courts in this Circuit have repeatedly denied pretrial requests for discovery orders pursuant to *Brady* where the government, as here, has made a good-faith representation to the court and defense counsel that it recognizes and has complied with its disclosure obligations under Brady.").

In any event, to date, the Government knows of no exculpatory *Brady* information in this case. If such material comes to light, the Government will produce that material in a timely manner to the defense. The Government submits that because it recognizes its continuing obligations under *Brady*, there is no need for any action by the Court. *United States* v. *Nunez*, 00 Cr. 121 (RCC), 2001 WL 91708, at *7 (S.D.N.Y. Feb. 1, 2001).

To the extent the defendant request seeks early disclosure of materials beyond *Brady*, that could be used to impeach Government witnesses (3500 material, Jencks Act materials, and *Giglio* materials), the Court should reject this application because there is no cause for such an order in this case.

With respect to the defendants' application for production of witness statements or Jencks Act materials, pursuant to 18 U.S.C. § 3500, as the Second Circuit observed in *Coppa*, the Jencks Act does not require disclosure of prior statements of Government witnesses *anytime* before their direct testimony at trial. 267 F.3d at 145. Title 18, United States Code, Section 3500 provides:

> (a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection *until said witness has testified on direct examination in the trial of the case.*

(emphasis added). The Federal Rules of Criminal Procedure also do not authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500 nor the "discovery or inspection of reports, memoranda, or other internal

government documents made by ... [any] government agent in connection with investigating or prosecuting the case." Fed. R. Crim. P. 16(a)(2); *see also United States* v. *Koskerides*, 877 F.2d 1129, 1133-34 (2d Cir. 1989). Police reports, "DD5s," and police memo books clearly fall into this undiscoverable category. *See*, *e.g.*, *United States* v. *Giovanelli*, 747 F. Supp. 915 (S.D.N.Y. 1989) (CBM) (recognizing that police reports, agent reports, DD5s, and memo books are 3500 Material). And Rule 16 provides no carve-out for the disclosure of unspecified "state court complaints" in a federal criminal case.

In this case, the Government intends to provide Jencks Act material sufficiently in advance of each of the witnesses' testimony to allow defense counsel to review that material without any interruption in the trial. The Government does not anticipate that the trial of this case will be especially long or complicated. At present, it is the Government's intention to provide all Jencks Act materials the business day before the trial begins, as is the practice in this District. Despite the defendant's claim, there is nothing unusual about the facts of this case, or onerous about the Government witnesses in this case to justify earlier production. Defendant's motion for an order from the Court compelling immediate production of Jencks Act material should therefore be denied.

The defendant's motion also appears to seek production of *Giglio* material in advance of trial. Under *Giglio* v. *United States*, 405 U.S. 150, 154 (1972), favorable evidence includes not only evidence that tends to exculpate the accused, but also evidence that is useful to impeach the credibility of a Government witness. *See Coppa*, 267 F.3d at 139. The Government intends to disclose *Giglio* material in the same manner as Jencks Act material: on the last business day prior to the commencement of the trial. The Second Circuit held in *Coppa* that *Giglio* material also need only be disclosed "in time for its effective use at trial," and that a district court may not order disclosure of *Giglio* material far in advance of trial. *Coppa*, 267 F.3d at 142. Accordingly, the defendant's request should be denied. *See United States* v. *Nixon*, 418 U.S. 683, 701 (1974) ("[g]enerally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial"); *Nunez*, 2001 WL 91708, at *8 (denying motion for early production of *Giglio* material, where Government indicated that it intended to produce *Giglio* material "the day before the corresponding witness testifies or, if it appears that additional time will be reasonably required to review such material, sufficiently in advance of such witness's testimony so as to avoid delay"); *United States* v. *Roberts*, 01 Cr. 410 (RWS), 2001 WL 1602123, at *16 (S.D.N.Y. Dec. 14, 2001) (decided after *Coppa*, and holding that it is sufficient for the Government to produce *Giglio* material one day prior to witness's testimony, or earlier if additional time is required to review such material).

Accordingly, the defendant's motion for early production of exculpatory or impeachment materials should be denied.

**III. Defendant's request for any "other crimes" evidence that the Government will introduce at trial should be denied.**

The defendant requests "timely disclosure" of all "other crimes" evidence that the Government will introduce pursuant to Rule 404(b) of the Federal Rules of Evidence. As the Court is aware, Rule 404(b) permits the admission, under certain circumstances, of evidence of "crimes, wrongs, or acts" other than those charged in the indictment. Fed. R. Evid. 404(b). The Rule requires that a party "provide reasonable notice in advance of trial . . . of the general nature of any such evidence it intends to introduce at trial." *Id.* The rule itself does not state what amount of time is "reasonable," and courts hold that reasonableness is generally determined by reference to the circumstances of the particular case. *See United States* v. *Kevin*, No. 97 Cr. 763 (JGK), 1999 WL 194749, at *14 (S.D.N.Y. Apr. 7, 1999). The Rule also specifically provides that notice of such evidence may be given "during trial if the court excuses pretrial notice on good cause shown." Fed. R. Evid. 404(b).

While requesting that the Court permit later disclosure under appropriate circumstances, *see United States* v. *Valenti*, 60 F.3d 941, 945 (2d Cir. 1995) (holding that the Government provided "reasonable notice" under Rule 404(b) where evidence was obtained and produced to the defendant four days before trial), the Government proposes that it provide notice of such evidence 14 days in advance of trial. First, at this time, the Government has not yet determined which evidence, if any, it will seek to offer at trial pursuant to Rule 404(b). Second, Rule 404(b) sets no minimum time for such notice by the Government, nor would any time limit be appropriate because the evidence the Government intends to offer may well change as the proof and possible defenses crystallize. *See United States* v. *Matos-Peralta*, 691 F. Supp. 780, 791 (S.D.N.Y. 1988). Third, as noted above, it does not appear that this trial will be especially long or complicated, and therefore defendants cannot demonstrate a need for advance notice of 404(b) evidence beyond 14 days. Finally, in accordance with Rule 404(b), the Government respectfully requests that it be permitted to seek to introduce at trial Rule 404(b) evidence if the Government can demonstrate "good cause" for giving notice after 14 days prior to trial.

Accordingly, to the extent the defendant's motion seeks notice of 404(b) evidence earlier than 14 days before trial, the Government requests that the motion be denied.

**IV. Defendant's request for the identification of any expert witness to be called by the Government at trial should be denied.**

The Government seeks disclosure in advance of trial the identity of any expert witnesses the Government intends to call at trial, as well as all "information, studies, and reports" upon which the testimonial opinions will be based. The Government is well aware of its notice requirements under Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure and will comply

with them in a timely fashion should it decide that expert testimony will be needed at trial. Accordingly, this request should be denied as premature.

**V. Defendant's request for a bill of particulars should be denied.**

The defendant seeks a bill of particulars in this case in order to "specify the nature of the charges so that defendant may prepare for trial, prevent unfair surprise, and avoid double jeopardy if faces with a second prosecution for the same offense." (Def. Mot. at 17). Specifically, the defendant seeks the identity of all the defendant's co-conspirators; and the details of the particularized narcotics transactions by date, nature of drug, quantity and cash amounts, and all locations where these transactions occurred.

As the defendant acknowledges, the sole legitimate purpose of a bill of particulars is to furnish those facts that are necessary (i) to apprise the defendant of the charges against her with sufficient precision to enable her to prepare her defense; (ii) to avoid unfair surprise at trial; and (iii) to preclude a second prosecution for the same offense. *See, e.g., Wong Tai* v. *United States*, 273 U.S. 77, 8082 (1927). Therefore, a bill of particulars is only required "'where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused.'" *United States* v. *Torres*, 901 F.2d 205, 234 (2d Cir.), *cert. denied*, 498 U.S. 906 (1990); *see also United States* v. *Leonelli*, 428 F. Supp. 880, 882 (S.D.N.Y. 1977). The ultimate test for whether a bill of particulars should be granted is not whether the information sought is merely helpful in preparing for trial, but whether it is *necessary* for the limited notification purposes of a bill of particulars. *See United States* v. *Ramirez*, 602 F. Supp. 783, 793 (S.D.N.Y. 1985); *United States* v. *Leighton*, 265 F. Supp. 27, 35 (S.D.N.Y. 1968).

For this reason, a bill of particulars generally is not required where the information sought by the defense is readily accessible in some acceptable, alternative form. *United States* v. *Bortnovksy*, 820 F.2d 572, 574 (2d Cir. 1987); *see also United States* v. *Panza*, 750 F.2d 1141, 1148 (2d Cir. 1984) (no bill of particulars required where indictment spelled out defendants' conduct in scheme, prosecutor met with defense counsel and explained government's contentions, and provided defense with copies of all relevant documents); *United States* v. *Ruiz*, 702 F. Supp. 1066, 1070-1071 (S.D.N.Y. 1989), *aff'd*, 894 F.2d 501 (2d Cir. 1990) (denying bill of particulars where indictment is specific, defendant had adequate discovery and time to prepare, and there had been meetings between government counsel and counsel for the government); *United States* v. *Shoher*, 555 F. Supp. 346, 349 (S.D.N.Y. 1983) ("the complexity of the offense, the clarity of the indictment, and the degree of discovery otherwise available to the defendants are all relevant factors to consider").

Furthermore, a bill of particulars is not to be used to learn: evidentiary detail, *Torres*, 901 F.2d at 234; the precise manner in which the charged crimes were committed, *United States* v. *Andrews*, 381 F.2d 377, 378 (2d Cir. 1967); the manner in which the Government will prove the charges, *United States* v. *Leonelli*, 428 F. Supp. at 882; all the overt acts in furtherance

of a conspiracy, *United States* v. *Carroll*, 510 F.2d 507, 509 (2d Cir. 1975); or particular acts that a particular defendant participated in, had knowledge of, or for which he is being held responsible, *United States* v. *Jimenez*, 824 F. Supp. 351, 363 (S.D.N.Y. 1993).

The rationale for this highly restricted use of a bill of particulars is simple. First, the Government is not required to provide information tantamount to an itemized preview of its proof because of the very real danger in criminal cases that the defendant will tailor his or her testimony to explain away the Government's predisclosed case. *United States* v. *Cimino*, 31 F.R.D. 277, 279 (S.D.N.Y. 1962), *aff'd*, 421 F.2d 509 (2d Cir. 1963). Second, detailed inquiries into the Government's case repeatedly have been rejected because they would unduly restrict the Government in presenting its proof at trial. *See, e.g.*, *United States* v. *Jimenez*, 824 F. Supp. at 363; *United States* v. *Goldman*, 439 F. Supp. 352 (S.D.N.Y. 1977).

The defendant's request for a bill of particulars seeks information to which the defendant is not entitled. However, as referenced by the defendant in the instant motion, defense counsel has had "discussions with the prosecutor," including an initial proffer with defense counsel and a second, "reverse proffer" with the defendant herself. The Government agreed to participate in both these meetings (indeed, *initiated* both these meetings) because it recognized that this was not a case where the Rule 16 discovery was particularly voluminous or wholly illustrative of the defendant's guilt.[4] During these sessions, the prosecutor provided *directly* to the defense with detailed information about the charged criminal conduct, and described her specific role in facilitating importation of loads of marijuana across the Canadian border into the United States, and the repatriation of narcotics proceeds. The defense was specifically told what the Government witnesses would say at trial, though obviously, the Government did not disclose the identities of those witnesses. These meetings alone obviate any need for a bill of particulars, plus the defendant received Rule 16 discovery (which included here detailed confession), and will have adequate time to prepare a defense in advance of trial (the date of which has not yet been set). *See Panza*, 750 F.2d at 1148; *Ruiz*, 702 F. Supp. at 1070-1071. Further particulars detailing the identity of all his co-conspirators and the exact dates and locations of events undertaken in furtherance of the conspiracy is not required to permit the defendant to prepare his defense, to avoid surprise, and to defend against double jeopardy should the need arise. Accordingly, the defendant's request for this information in a bill of particulars should be denied.

## VI. Defendant's request for list of the Government witnesses should be denied.

The defendant requests that she be provided with a list of potential Government trial witnesses in advance at trial. As the Court is well aware, there is no requirement that the Government ever provide the defense with witness lists, though we effectively do so upon providing 3500 materials the business day before trial, and more formally do so during trial when

---

[4] That being said, the defense appears to ignore the defendant's lengthy and detailed post-arrest statement in which she confessed to the charged crimes.

we advise the defense (as a courtesy) whom will be called the following trial day. Absent any showing of particularized need in this case (of which there is absolutely none), this motion should be denied.

In support, the defendant cites *United States* v. *Santiago*, 174 F. Supp. 2d 16, 38 (S.D.N.Y. 2001), which outlines some of the factors to be considered by the Court in assessing the materiality and reasonableness of this highly unusual request for a pre-trial witness list. The factors in *Santiago*, despite the defendant's best efforts, do not cut in favor of ordering the Government to produce a witness list. While the instant charges do not include counts of violence, nor does the defendant have a known history of personal involvement with violence, there is no question that individuals who participated in the charged conspiracy are involved with a large-scale, violent, narcotics importation organization. Accordingly, there should be no question that supplying the witnesses names prior to trial could not only impact those witnesses ability or willingness to testify, but their safety, regardless of this particular defendant's non-violent history. Similarly, the notion that the defenses' ability to prepare and/or investigate a defense is thwarted without knowing the identities of the Government's witnesses is nonsensical. On the contrary, the defendant herself could not doubt be a valuable resource to prepare a defense if she were to advise her defense counsel who may be a witness against or, with whom she participated in the charged crimes.

Furthermore, the defendant has failed to proffer any reason for the Court to grant this unusual form of disclosure in advance of trial; and accordingly, the defendant offers no "particularized showing of need" required under the settled law, and this request should be denied. As numerous courts have recognized, absent some "'particularized showing of need, beyond the obvious assertion that such a list would facilitate preparation for a trial,'" the defendant is not entitled to a list of government witnesses prior to trial. *United States* v. *Greyling*, No. 00 Cr. 631 (RCC), 2002 WL 424655, at *3 (S.D.N.Y. Mar. 18, 2002) (quoting *United States* v. *Pastor*, 419 F. Supp. 1318, 1330 (S.D.N.Y. 1976)); *Nunez*, 2001 WL 91708, at *8 (same); *accord United States* v. *Alessi*, 638 F.2d 466, 481 (2d Cir. 1980) ("the prosecution [is] under no obligation to give [the defendant] advance warning of the witnesses who would testify against him") (citing *United States* v. *Cannone*, 528 F.2d 296, 301-02 (2d Cir. 1975) (district court abused its discretion in granting defense motion for witness list supported by general statement of need; mere "abstract conclusory claim that such disclosure [is] necessary to [the] proper preparation for trial" is insufficient)).

Because a defendant can rarely meet his "heavy burden" of demonstrating need, *United States* v. *Alvalle*, No. 85 Cr. 419 (JFK), 1985 WL 2348, at *1 (S.D.N.Y. Aug. 22, 1985), requests for witness lists are routinely denied by courts in this district. *See, e.g.*, *id.* at *1 (immigration fraud charges); *United States* v. *Ojeikere*, 299 F. Supp. 2d 254, 259 (S.D.N.Y. 2004) (wire fraud); *United States* v. *Beeman*, No. 01 Cr. 1141 (DAB), 2003 WL 22047871 (S.D.N.Y. Aug. 29, 2003) (mail fraud charges); *Jones*, 2000 WL 1448640, at *3; *United States* v. *Tavarez*, 1995 WL 390167, at *12 (S.D.N.Y. June 30, 1995); *United States* v. *Martinez*, 1995

WL 10849, at *5 (S.D.N.Y. Jan. 12, 1995); *United States* v. *Victor Teicher & Co.*, 726 F. Supp. 1424, 1443 (S.D.N.Y. 1989) (insider trading charges); *Ruiz*, 702 F. Supp. at 1071; *United States* v. *Nelson*, 606 F. Supp. 1378, 1389 (S.D.N.Y. 1984) (commodity fraud and wire fraud charges); *Goldman*, 439 F. Supp. at 350-51 (mail fraud and tax charges). Here, the defendant makes no effort to make the required particularized showing of need.

In light of the forgoing, the defendant's request should be denied.

**Conclusion**

For all the forgoing reasons, the defendant's discovery requests should be denied. Should the Court require any additional information, please contact the undersigned at Your Honor's convenience.

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney

By: _/s/_______________________________
Jeffrey A. Brown/Glen G. McGorty
Assistant United States Attorneys
(212) 637-1110/2505

cc: Thomas P. Sleisenger, Esq.

**SYNOPSIS**

On 04/08/08, at approximately 7:35 P.M., Parvinder DOSANJH was arrested in front of 228 Idaho Avenue in Santa Monica, California. The following report details the arrest of DOSANJH and the subsequent statements made by DOSANJH after her arrest.

**DETAILS**

1. At approximately 7 P.M., [redacted] observed DOSANJH's boyfriend, Matthew MUZIO arrived at the garage located in the back of 228 Idaho Ave. MUZIO was driving a silver 2005 Nissan Maxima bearing New York registration number EGC228. A DMV check revealed the vehicle to be registered to Egidio G. CAFARELLI, D.O.B. 02/28/69 at 221-07 39th Avenue Bayside, New York. MUZZIO proceeded to enter the building at 228 Idaho Ave.

2. At approximately 7:35 P.M. [redacted] observed MUZIO and DOSANJH exit the building at 228 Idaho Ave. and approach the Nissan Maxima. SA Cousin advised DOSANJH that she was being arrested for violations of Federal Narcotics laws as well as Federal Money laundering Statutes. [redacted] walked back into the hallway of the building at 228 Idaho Street along with [redacted] [redacted] showed DOSANJH a copy of the warrant that had been issued for her arrest. At approximately 7:40 P.M. [redacted] then read DOSANJH her Miranda rights. DOSANJH stated that she understood her rights and asked agents if she could

11. Distribution: [redacted] | 12. Signature (Agent) | 136[illegible] 04[illegible]

talk to them inside of her apartment, Apartment #8. At approximately 7:45 P.M. DOSANJH opened the apartment with her keys and invited the agents into the apartment. DOSANJH then gave agents consent to search the apartment.

3. [redacted] asked DOSANJH if she had been picking up bags of marijuana at the U.S. border in upstate New York. DOSANJH stated that she had picked up large bags of marijuana in upstate New York. She stated that she had done so on a number of occasions but could not remember on how many occasions she had picked up these bags of marijuana at the border.

4. DOSANJH stated that the marijuana that she was picking up was being used for medical purposes. DOSANJH stated that the bags that she had picked up were large bags and acknowledged that the bags contained large amounts of marijuana. DOSANJH then stated that "it was only weed" and that weed was a "gift from God". DOSANJH stated that she did not think it was such a bad thing since it was only bags of marijuana that she had picked up and delivered.

5. [redacted] asked DOSANJH who had directed her to pick up these large bags of marijuana at the border. DOSANJH stated that she did it by herself. DOSANJH then stated that she had begun a new life and that she wanted to try to help people with her life. She stated that she did not deal "with those people anymore"

6. DOSANJH again stated that she thought the marijuana was being used for medical purposes although she stated that she had never delivered the marijuana to Doctors, Hospitals or any other medically related people. DOSANJH stated that she delivered the marijuana to other people who she did not know.

7. [redacted] asked DOSANJH if she had ever delivered large bags of money to people on the street. DOSANJH stated that she delivered large bags which she thought contained large amounts of currency. DOSANJH stated that she picked up these bags of money on the street but did not know the people who gave her the bags of money. DOSANJH also



This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

stated that she delivered these same bags of money to other people on the street who she did not know.

8. DOSANJH stated that the currency was being delivered to pay for and purchase more loads of marijuana. DOSANJH stated that she did these pickups and deliveries of bags of money by herself. She stated that she was not sure that the bags contained money but she assumed that the bags contained money. DOSANJH stated that if you buy something you have to pay for it. She again stated that the money was being delivered and used to purchase more marijuana. [redacted] asked DOSANJH who directed her to pickup and deliver the bags of money. DOSANJH stated that she does not talk to those people anymore and again stated that she had begun a new life.

9. DOSANJH stated that she had gone to Montreal this past New Years Eve and met friends in Montreal.

10. DOSANJH stated that she knew that she was breaking the law when she was picking up and delivering the bags of marijuana. She also stated that she knew she was breaking the law when she was picking up and delivering bags of currency. DOSANJH stated that she did not think weed was such a bad thing.

11. DOSANJH stated that she could not remember how many times she had driven up to the Canadian border and picked up large bags of marijuana. [redacted] asked her if she thought that picking up hockey bags full of weed was a lot of weed to be used for medical purposes. DOSANJH stated that she did not think it was a lot and again stated that she thought the bags of weed were being used for medical purposes.

12. DOSANJH stated that she picked up and delivered the bags of money on the street by herself; that she had not been instructed to do this by anyone. DOSANJH stated that she did not know who gave her the bags of money nor did she know the people to whom she delivered the bags of money. She then stated again that she did it by herself and that she "did not deal with those people anymore"



This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

13. DOSANJH gave [redacted] her consent to search her phone/blackberry.

14. DOSANJH then asked [redacted] if she could ask her boyfriend to call an attorney for her. [redacted] responded yes and took DOSANJH to talk to her boyfriend. DOSANJH then told her boyfriend, Matthew MUZIO, to call ALEX at telephone number (917) 439-2290. It was later